**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**UNITED STATES OF AMERICA,**

        Plaintiff,

**v.**                                        **Criminal Action No. 1:17-CR-51
(KEELEY)**

**JAMES L. LAURITA, JR.,**

        Defendant.

## <u>UNITED STATES' PROPOSED JURY INSTRUCTIONS</u>

Now comes the United States of America, by William J. Powell, United States Attorney

for the Northern District of West Virginia, by Jarod J. Douglas and Randolph J. Bernard, Assistant

United States Attorneys for said District, and hereby proposes the following jury instructions.

                                    Respectfully submitted,

                                    WILLIAM J. POWELL
                                    UNITED STATES ATTORNEY

        By:    <u>/s/ Jarod J. Douglas</u>
               Jarod J. Douglas
               Assistant United States Attorney

        And
               <u>/s/ Randolph J. Bernard</u>
               Randolph J. Bernard
               Assistant United States Attorney

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 1

**(The Nature of the Offense Charged in Count One, 18 U.S.C. §§ 1001(a)(1) and 2)**

Count One charges that:

The defendant, **JAMES L. LAURITA, JR.**, was the president, chief executive officer, and minority owner of Mepco, LLC, a Delaware limited liability company with its principal office address located in Morgantown, West Virginia.

Mepco, LLC was a wholly owned subsidiary of a partnership consisting of the defendant and Longview Intermediate Holdings C, LLC.

Federal Candidate 1 was a candidate for election and re-election to the United States House of Representatives.

Committee A was the authorized federal campaign committee formed to receive campaign contributions for the election and re-election of Federal Candidate 1.

Federal Candidate 2 was a candidate for election and re-election to the United States Senate.

Committee B was the authorized federal campaign committee formed to receive campaign contributions for the election and re-election of Federal Candidate 2.

Federal Candidate 3 was a candidate for election and re-election to the United States House of Representatives or the United States Senate.

Committee C1 and Committee C2 were the authorized federal campaign committees formed to receive contributions for the election and re-election of Federal Candidate 3.

Federal Candidate 4 was a candidate for election to the United States House of Representatives.

Committee D was the authorized federal campaign committee formed to receive contributions for the election of Federal Candidate 4.

The Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, Sections 30101 through 30146 ("Election Act"), placed limits and reporting obligations upon financial activity intended to influence the election of candidates for federal office for the purpose of combatting both corruption and the appearance of corruption.

2

To limit the influence that any one person could have on the outcome of a federal election, the Election Act established limits on the amounts individuals may contribute to any candidate's authorized campaign committee.

For the 2010 federal election cycle (running from November 2008 to November 2010), the Election Act limited both primary and general election campaign contributions to $2,400 each, for a total of $4,800 from any individual to any one candidate in the election cycle.

For the 2012 federal election cycle (running from November 2010 to November 2012), the Election Act limited both primary and general election campaign contributions to $2,500 each, for a total of $5,000 from any individual to any one candidate in the election cycle.

For the 2014 federal election cycle (running from November 2012 to November 2014), the Election Act limited both primary and general election campaign contributions to $2,600 each, for a total of $5,200 from any individual to any one candidate in the election cycle.

To prevent individuals from evading the limit on amounts that an individual could contribute to an authorized campaign committee, the Election Act prohibited a person from making a political contribution in the name of another person, including giving or reimbursing funds to a conduit contributor (also known as a "straw contributor") for the purpose of having the conduit contributor pass the funds on to a federal candidate in the name of the conduit contributor.

The Federal Election Commission ("FEC") was an agency and department of the United States with jurisdiction to enforce the limits and prohibitions of the Election Act, and to receive and publish truthful and accurate information from authorized campaign committees specifying the source and amounts of contributions to those committees for publication on the internet to provide citizens with a transparent record of contributions to candidates for federal office, which anyone may examine as a basis for further inquiry, and thereby instill public confidence that the electoral process has not been corrupted.

## Scheme

From on or about March 5, 2010, to on or about July 15, 2013, in the Northern District of West Virginia and elsewhere, in a matter within the jurisdiction of the FEC, a department or agency of the United States Government, the defendant, **JAMES L. LAURITA, JR.**, did knowingly and willfully cause the falsification, concealment, and cover up by trick, scheme, and device a material fact.

In or about March 2010, the defendant, aware of the legal limits on individual campaign contributions, knowingly devised a scheme and plan whereby he would unlawfully use employees of Mepco, LLC and their respective spouses as conduits through which to funnel the money of Mepco, LLC to Committee A, Committee B, Committee C1, Committee C2, Committee D, and other federal campaign committees, in the names of the conduits.

It was part of the scheme and plan to knowingly conceal from the FEC, the committees, the federal candidates, and the public the true source and amount of the campaign contributions.

It was part of the scheme and plan to use conduits to knowingly deceive the federal candidates and the committees into believing that the defendant lawfully raised significant contributions of money for the committees from the conduits when, in truth and fact, he had not.

It was part of the scheme and plan to cause the various committees to file reports with the FEC falsely stating that the conduits had made the contributions, when in truth and in fact, and as the defendant well knew, each contribution was made by himself with funds of Mepco, LLC.

### Execution of the Scheme

In execution of the scheme, the defendant **JAMES L. LAURITA, JR.**, committed, and caused others to commit, the following acts, and others, in the Northern District of West Virginia, and elsewhere.

On or about March 5, 2010, the defendant met with a number of employees of Mepco, LLC and advised them that he would begin to direct them and their spouses to make contributions to campaign committees selected by him in amounts specified by him, and that the money of Mepco, LLC would be used to fund these contributions.

On or about March 9, 2010, the defendant caused Mepco, LLC to advance funds to the conduit employees of Mepco, LLC via direct deposit wire transfers from the bank account of Mepco, LLC.

In or about March 2010, the defendant directly and indirectly solicited employees of Mepco, LLC to have their spouses make contributions to Committee A, in amounts specified by the defendant and using the funds of Mepco, LLC, which the defendant had caused to be advanced to the employees.

On or about March 9, 2010, the defendant caused the spouse of a Mepco, LLC employee to make a contribution to Committee A in the amount of approximately $500.00, which the defendant had caused to be funded from Mepco, LLC money.

In or about June 2010, the defendant directly and indirectly solicited employees of Mepco, LLC, and their spouses, to make contributions to Committee A, in amounts specified by the defendant and using the funds of Mepco, LLC, which the defendant had caused to be advanced to the employees.

On or about June 25, 2010, the defendant caused a Mepco, LLC employee and his spouse to each make a contribution to Committee A in the amount of approximately $1,000.00, which the defendant had caused to be funded from Mepco, LLC money.

In or about August 2010, the defendant directly and indirectly solicited employees of Mepco, LLC to make contributions to Committee B, in amounts specified by the defendant and using the funds of Mepco, LLC, which the defendant had caused to be advanced to the employees.

On or about August 16, 2010, the defendant caused a Mepco, LLC employee to make a contribution to Committee B in the amount of approximately $1,000.00, which the defendant had caused to be funded from Mepco, LLC money.

On or about August 19, 2010, and in furtherance of his scheme and plan, the defendant caused Committee A to file a quarterly report with the FEC falsely stating that the conduits had made the March 2010 contributions, when in truth and in fact, and as the defendant well knew, the defendant had caused each contribution to be funded from Mepco, LLC.

In or about September 2010, the defendant directly and indirectly solicited employees of Mepco, LLC to make contributions to Committee C1, in amounts specified by the defendant and using the funds of Mepco, LLC, which the defendant had caused to be advanced to the employees.

On or about September 9, 2010, the defendant caused a Mepco, LLC employee to make a contribution to Committee C1 in the amount of approximately $500.00, which the defendant had caused to be funded from Mepco, LLC money.

On or about October 15, 2010, and in furtherance of his scheme and plan, the defendant caused Committee B to file a quarterly report with the FEC falsely stating that the conduits had made the August 2010 contributions, when in truth and in fact, and as the defendant well knew, the defendant had caused each contribution to be funded from Mepco, LLC.

On or about October 15, 2010, and in furtherance of his scheme and plan, the defendant caused Committee C1 to file a quarterly report with the FEC falsely stating that the conduits had made the September 2010 contributions, when in truth and in fact, and as the defendant well knew, the defendant had caused each contribution to be funded from Mepco, LLC.

On or about November 8, 2010, and in furtherance of his scheme and plan, the defendant caused Committee A to file a quarterly report with the FEC falsely stating that the conduits had made the June 2010 contributions, when in truth and in fact, and as the defendant well knew, the defendant had caused each contribution to be funded from Mepco, LLC.

In or about March 2011, the defendant directly and indirectly solicited employees of Mepco, LLC, and their spouses, to make contributions to Committee A, in amounts specified by the defendant and using the funds of Mepco, LLC, which the defendant had caused to be advanced to the employees.

On or about March 17, 2011, the defendant caused Mepco, LLC to advance funds to the conduit employees of Mepco, LLC via direct deposit wire transfers from the bank account of Mepco, LLC.

On or about March 17, 2011, the defendant caused a Mepco, LLC employee and his spouse to each make a contribution to Committee A in the maximum allowable amount of approximately $2,500.00, which the defendant had caused to be funded from Mepco, LLC money.

On or about April 15, 2011, and in furtherance of his scheme and plan, the defendant caused Committee A to file a quarterly report with the FEC falsely stating that the conduits had made the March 2011 contributions, when in truth and in fact, and as the defendant well knew, the defendant had caused each contribution to be funded from Mepco, LLC.

On or about August 12, 2011, the defendant caused Mepco, LLC to advance funds to the conduit employees of Mepco, LLC via direct deposit wire transfers from the bank account of Mepco, LLC.

In or about April 2012, the defendant directly and indirectly solicited employees of Mepco, LLC to make contributions to Committee B, in amounts specified by the defendant and using the funds of Mepco, LLC, which the defendant had caused to be advanced to the employees.

On or about April 5, 2012, the defendant caused a Mepco, LLC employee to make a contribution to Committee B in the maximum allowable amount for the primary and general elections of approximately $5,000.00, which the defendant had caused to be funded from Mepco, LLC money.

On or about April 23, 2012, and in furtherance of his scheme and plan, the defendant caused Committee B to file a quarterly report with the FEC falsely stating that the conduits had made the April 2012 contributions, when in truth and in fact, and as the defendant well knew, the defendant had caused each contribution to be funded from Mepco, LLC.

6

In or about September 2012, the defendant directly and indirectly solicited employees of Mepco, LLC to make contributions to Committee D, in amounts specified by the defendant and using the funds of Mepco, LLC, which the defendant had caused to be advanced to the employees.

On or about September 21, 2012, the defendant caused a Mepco, LLC employee to make a contribution to Committee D in the amount of approximately $1,000.00, which the defendant had caused to be funded from Mepco, LLC money.

On or about October 15, 2012, and in furtherance of his scheme and plan, the defendant caused Committee D to file a quarterly report with the FEC falsely stating that the conduits had made the September 2012 contributions, when in truth and in fact, and as the defendant well knew, the defendant had caused each contribution to be funded from Mepco, LLC.

In or about March 2013, the defendant directly and indirectly solicited employees of Mepco, LLC, and their spouses, to make contributions to Committee A, in amounts specified by the defendant and using the funds of Mepco, LLC, which the defendant had caused to be advanced to the employees.

In or about March 2013, the defendant directly and indirectly solicited employees of Mepco, LLC, and their spouses, to make contributions to Committee C2, in amounts specified by the defendant and using the funds of Mepco, LLC, which the defendant had caused to be advanced to the employees.

On or about March 14, 2013, the defendant caused Mepco, LLC to advance funds to the conduit employees of Mepco, LLC via direct deposit wire transfers from the bank account of Mepco, LLC.

On or about March 23, 2013, the defendant caused a Mepco, LLC employee and his spouse to each make a contribution to Committee C2 in the maximum allowable amount of approximately $2,600.00, which the defendant had caused to be funded from Mepco, LLC money.

On or about April 1, 2013, the defendant caused a Mepco, LLC employee and his spouse to each make a contribution to Committee A in the maximum allowable amount of approximately $2,600.00, which the defendant had caused to be funded from Mepco, LLC money.

On or about April 15, 2013, and in furtherance of his scheme and plan, the defendant caused Committee A to file a quarterly report with the FEC falsely stating that the conduits had made the March 2013 contributions, when in truth and in fact, and as the defendant well knew, the defendant had caused each contribution to be funded from Mepco, LLC.

On or about July 15, 2013, and in furtherance of his scheme and plan, the defendant caused Committee C2 to file a quarterly report with the FEC falsely stating that the conduits had made the March and April 2013 contributions, when in truth and in fact, and as the defendant well knew, the defendant had caused each contribution to be funded from Mepco, LLC.

Defendant has pled not guilty to this count.

Authorities:

Indictment.

18 U.S.C. §§ 1001(a)(1) and 2.

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 2

### The Statutes Defining the Offense Charged in Count One

Section 1001(a)(1) of Title 18 of the United States Code provides, in part, that:

. . . [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact . . .

Shall be guilty of an offense against the United States.

Section 2 of Title 18 of the United States Code provides, in whole, that:

Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Authorities:

18 U.S.C. §§ 1001(a)(1) and 2.

Eric Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § III. (Emily Deck Harill, ed., 2015 Online Edition).

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 3

**Scheme to Cause False Statements to Federal Election Commission**
**Count One**
**Elements of the Offense**

For you to find the defendant guilty of Count One of the Indictment, you must find that the Government has proven, beyond a reasonable doubt, that:

First:      The defendant falsified, concealed, or covered up a fact by trick, scheme, or device, or caused another person to do so, in a matter within the jurisdiction of the Federal Election Commission;

Second:     The fact was material to the activities or decisions of the Federal Election Commission; and

Third:      The defendant acted knowingly and willfully.

To establish the first element, the Government must prove beyond a reasonable doubt that a fact was falsified, concealed, or covered up by trick, scheme, or device, in a matter within the jurisdiction of the Federal Election Commission.

To establish the second element, the Government must prove beyond a reasonable doubt that the fact falsified, concealed, or covered up was material to the Federal Election Commission – in other words, that the fact had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities. The fact falsified, concealed, or covered up need not have actually influenced the agency, and the agency need not rely on the information in fact for it to be material.

To establish the third element, the Government must prove beyond a reasonable doubt that the defendant acted deliberately and knew that the fact was falsified, concealed, or covered up. There is no requirement that the defendant acted with the intention of influencing the government agency. To falsify, conceal, or cover up a fact "willfully," the defendant must have the specific intent to make or cause another person to falsify, conceal, or cover up a fact. Specific intent does not require evil intent but only that the defendant act deliberately and with knowledge. In addition, the Government does not have to prove that the defendant was aware of the statutory requirements and prohibitions of the Federal Election Campaign Act, or that he purposefully violated the Act. In other words, to satisfy the third element of Count One, the Government does not have to prove that the defendant was aware that federal law prohibited conduit campaign contributions or that he purposely violated this prohibition. Proof that the defendant acted deliberately and with knowledge that the facts concerning those contributions in the FEC reports were falsified, concealed, or covered up is sufficient to find the third element of Count One satisfied.

Authorities:

18 U.S.C. §§ 1001(a)(1) and 2.

Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § III, V.

United States v. Hopkins, 916 F.2d 207, 214 (5th Cir. 1990); see also United States v. Hsia, 176 F.3d 517 (D.C. Cir. 1999); United States v. Kanchanalak, 192 F.3d 1037 (D.C. Cir. 1999).

United States v. Fuller, 162 F.3d 256, 260 (4th Cir. 1998); United States v. Evans, 272 F.3d 1069, 1086 (8th Cir. 2001); United States v. Carr, 303 F.3d 539, 546 (4th Cir. 2002); United States v. Bailey, 444 U.S. 394, 404 (1980); United States v. Silva, 745 F.2d 840, 850-851 (4th Cir. 1984); United States v. Daughtry, 48 F.3d 829 (4th Cir. 1995), vacated on other grounds, 516 U.S. 984 (1995).

United States v. Arch Trading Co., 987 F.2d 1087, 1095 (4th Cir. 1993) (citing United States v. Seay, 718 F.2d 1279, 1284 (4th Cir. 1983)); United States v. Hsia, 176 F.3d 517 (D.C. Cir. 1999); United States v. Kanchanalak, 192 F.3d 1037 (D.C. Cir. 1999); United States v. Curran, 20 F.3d 560 (3d Cir. 1994); United States v. Hopkins, 916 F.2d 2017 (5th Cir. 1990); United States v. Gabriel, 125 F.3d 89 (2d Cir. 1997); United States v. Danielczyk, 917 F.Supp.2d 573 (E.D.Va. 2013).

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 4

### The Nature of the Offense Charged in Counts Two and Three

Count Two charges that:

> During the calendar year 2012, in the Northern District of West Virginia and elsewhere, the defendant, **JAMES L. LAURITA, JR.**, did knowingly and willfully make, and cause to be made, contributions of money, aggregating $25,000.000 and more during the 2012 calendar year, in the names of others, to a candidate seeking nomination for election to federal office.

Count Three charges that:

> During the calendar year 2013, in the Northern District of West Virginia and elsewhere, the defendant, **JAMES L. LAURITA, JR.**, did knowingly and willfully make, and cause to be made, contributions of money, aggregating $25,000.000 and more during the 2013 calendar year, in the names of others, to a candidate seeking nomination for election to federal office.

Defendant has pled not guilty to these counts.

Authorities:

Indictment.

52 U.S.C. § 30122.

## <u>GOVERNMENT'S PROPOSED INSTRUCTION NO. 5</u>

### **The Statutes Defining the Offense Charged in Counts Two and Three**

Section 30122 of Title 52 of the United States Code provides, in part, that:

No person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution . . ..

Section 30109(d)(1)(A) of Title 52 of the United States Code provides, in part, that:

Any person who knowingly and willfully commits a violation of [Section 30116 of Title 52 of the United States Code] which involves the making, receiving, or reporting of any contribution, donation, or expenditure . . . aggregating $2,000 or more . . . during a calendar year . . .

Shall be guilty of an offense against the United States.

Section 2 of Title 18 of the United States Code provides, in whole, that:

Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

<u>Authorities</u>:

52 U.S.C. § 30122; 18 U.S.C. § 2.

Eric Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § III. (Emily Deck Harill, ed., 2015 Online Edition).

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 6

### Making Contributions in the Name of Another
### Count Two and Count Three
### Elements of the Offense

To find the defendant guilty of Count Two, the Government must prove each of the following elements beyond a reasonable doubt:

First:        The defendant made or caused to made contributions of at least $2,000.00 during the calendar year 2012;

Second:      The person named as the contributor was not the true source of the money used for the contribution, and the defendant was aware of this;

Third:       The contributions were made to a candidate for federal office, through the candidate's designated campaign committee; and

Fourth:     The defendant acted knowingly and willfully.

To find the defendant guilty of Count Three, the Government must prove each of the following elements beyond a reasonable doubt:

First:        The defendant made or caused to made contributions of at least $2,000.00 during the calendar year 2013;

Second:      The person named as the contributor was not the true source of the money used for the contribution, and the defendant was aware of this;

Third:       The contributions were made to a candidate for federal office, through the candidate's designated campaign committee; and

Fourth:     The defendant acted knowingly and willfully.

As to the first element, the Government must prove beyond a reasonable doubt that the defendant made or caused to be made contributions that totaled $2,000.00 or more during the calendar year 2012, for Count Two, and during the calendar year 2013, for Count Three. The Government need not prove that the defendant made or caused to be made contributions that totaled $25,000.00 or more, but only that it was $2,000.00 or more. If you find the defendant guilty because the Government has proved this and all the other elements beyond a reasonable doubt, then you must make a further finding as to the first element. Specifically, you must find whether the total contributions made or caused to be made by the defendant fell within three monetary ranges that I will provide to you on a special verdict form, namely (a) $2,000.00 to $20,000.00, (b) $10,001.00 to $24,999.00, or (c) $25,000.00 or more. Do not concern yourselves with the reason for specifying this range.

A contribution is any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for federal office.

As to the second element of both Count Two and Count Three, the Government must prove beyond a reasonable doubt that the individual identified as the contributor was not, in fact, the true source of the money used for the contribution, and that the defendant knew the named contributor was not the true source. Specifically, the law prohibits conduit contributions, which occur when a person provides anything of value, including a gift, subscription, loan, advance, deposit of money, or promise of reimbursement, to another person for the purpose of causing that other person to make a contribution in that other person's name.

As to the third element of both Count Two and Count Three, the Government must prove beyond a reasonable doubt that the recipient of the contributions was a candidate for federal office, and that the contributions were made to the candidate through the candidates designated committee.

Fourth and finally for both Count Two and Count Three, the Government must prove beyond a reasonable doubt that the defendant acted "knowingly and willfully."

An act is done "knowingly" if the defendant is aware of the act and does not act through ignorance, mistake, or accident. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

An act is done "willfully" if the defendant acted with knowledge that some part of his course of conduct was unlawful and with the intent to do something the law forbids, and again not by mistake or accident. In other words, a person acts "willfully" when he acts with a bad purpose to disobey or disregard the law.

It is not necessary for the Government to prove that the defendant was aware of the specific provision of the law that he is charged with violating. Rather, it is sufficient for the defendant to act knowing that his conduct is unlawful, even if he does not know precisely which law or regulation makes it so.

Authorities:

52 U.S.C. § 30122; 18 U.S.C. § 2.

Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § III, V.

United States v. Danielczyk, 788 F.Supp.2d 472, 480-481 (E.D. Va. 2011); United States v. Whittemore, 776 F.3d 1074, 1079-1080 (9th Cir. 2015).

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 7

### The Nature of the Offense Charged in Counts Four and Five

Count Four charges that:

> In or about March 2013, in the Northern District of West Virginia and elsewhere, the defendant, **JAMES L. LAURITA, JR.**, did knowingly and willfully make, and cause to be made, contributions to Committee A, the official federal campaign committee of Federal Candidate 1, which contributions exceeded the limitation contained in the Election Act, and which violation aggregated $25,000.000 and more during the 2013 calendar year.

Count Five charges that:

> In or about April 2013, in the Northern District of West Virginia and elsewhere, the defendant, **JAMES L. LAURITA, JR.**, did knowingly and willfully make, and cause to be made, contributions to Committee C2, the official federal campaign committee of Federal Candidate 3, which contributions exceeded the limitation contained in the Election Act, and which violation aggregated $25,000.000 and more during the 2013 calendar year.

Defendant has pled not guilty to these counts.

<u>Authorities</u>:

Indictment.

52 U.S.C. § 30116.

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 8

### The Statutes Defining the Offense Charged in Counts Four and Five

Section 30116 of Title 52 of the United States Code provides, in part, that:

[N]o person shall make contributions to any candidate and his authorized political committees with respect to any election for Federal office which, in the aggregate, exceed [the applicable limit].

Section 30109(d)(1)(A) of Title 52 of the United States Code provides, in part, that:

Any person who knowingly and willfully commits a violation of [Section 30116 of Title 52 of the United States Code] which involves the making, receiving, or reporting of any contribution, donation, or expenditure . . . aggregating $2,000 or more . . . during a calendar year . . .

Shall be guilty of an offense against the United States.

Section 2 of Title 18 of the United States Code provides, in whole, that:

Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Authorities:

52 U.S.C. §§ 30116, 30109; 18 U.S.C. § 2.

Eric Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § III.

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 9

**Making Excessive Campaign Contributions**
**Count Four and Count Five**
**Elements of the Offense**

To find the defendant guilty of Count Four, the Government must prove the following elements beyond a reasonable doubt:

First:            The defendant made or caused to be made individual campaign contributions in excess of the limit imposed on such contributions;

Second:      The excess contributions totaled $2,000.00 or more during the calendar year 2013;

Third:         The excess contributions were made to Congressman David McKinley, a candidate for federal office, through his designated campaign committee, McKinley for Congress; and

Four:          The defendant acted knowingly and willfully.

To find the defendant guilty of Count Five, the Government must prove the following elements beyond a reasonable doubt:

First:            The defendant made or caused to be made individual campaign contributions in excess of the limit imposed on such contributions;

Second:      The excess contributions totaled $2,000.00 or more during the calendar year 2013;

Third:         The excess contributions were made to Senator Shelley Moore Capito, a candidate for federal office, through her designated campaign committee, Capito for West Virginia; and

Four:          The defendant acted knowingly and willfully.

As to the first element of both Count Four and Count Five, I instruct you that, in 2013, the limit on individual contributions to candidates for federal elected office and their designated committees was $2,600.00 for the primary election and $2,600.00 for the general election, for a total of $5,200.00.

To establish the first and second elements of both Count Four and Count Five, the Government must prove beyond a reasonable doubt that the defendant made or willfully caused another to make contributions on his behalf that totaled $2,000.00 or more in excess of the $5,200.00 limit during the calendar year 2013. The Government need not prove that the amount in excess of the limit was $25,000.00 or more, but only that it was $2,000.00 or more. If you find the defendant guilty because the Government has proved this and all the other elements beyond a reasonable doubt, then you must make a further finding as to the first element. Specifically, you

must then find how much the contribution amount exceeded the limit within two monetary ranges that I will provide to you on a special verdict form, namely, either (a) $2,000.00 to $24,999.00, or (b) $25,000.00 or more.  Do not concern yourselves with the reason for specifying this range.

A contribution is any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for federal office.

In addition, the law regards any contributions made by the defendant, either directly or indirectly, on behalf of a particular candidate, including contributions which are in any way earmarked or otherwise directed through an intermediary or conduit to such candidate, as contributions from the defendant to such candidate.

As to the third element of Count Four, the Government must prove beyond a reasonable doubt that Congressman David McKinley was a candidate for federal office, specifically the United States House of Representatives, and that the excess contributions were made to him through his designated candidate committee, McKinley for Congress.

As to the third element of Count Five, the Government must prove beyond a reasonable doubt that Senator Shelley Moore Capito was a candidate for federal office, specifically the United States Senate, and that the excess contributions were made to her through her designated candidate committee, Capito for West Virginia.

Fourth and finally, for both Count Four and Count Five, the Government must prove beyond a reasonable doubt that the defendant acted "knowingly and willfully."

An act is done "knowingly" if the defendant is aware of the act and does not act through ignorance, mistake, or accident.  You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

An act is done "willfully" if the defendant acted with knowledge that some part of his course of conduct was unlawful and with the intent to do something the law forbids, and again not by mistake or accident.  In other words, a person acts "willfully" when he acts with a bad purpose to disobey or disregard the law.

It is not necessary for the Government to prove that the defendant was aware of the specific provision of the law that he is charged with violating.  Rather, it is sufficient for the defendant to act knowing that his conduct is unlawful, even if he does not know precisely which law or regulation makes it so.

Authorities:

52 U.S.C. §§ 30101, 30116; 18 U.S.C. § 2.
Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* §§ III, V.
United States v. Danielczyk, 788 F.Supp.2d 472, 480-481 (E.D. Va. 2011); United States v. Whittemore, 776 F.3d 1074, 1079-1080 (9th Cir. 2015).

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 10

### The Nature of the Offense Charged in Counts Six, Seven, and Eight

Count Six charges that:

> On or about October 15, 2012, in the Northern District of West Virginia and elsewhere, in a matter within the jurisdiction of the Federal Election Commission, a department or agency of the United States Government, the defendant, **JAMES L. LAURITA, JR.**, did knowingly and willfully cause to be made a materially false, fictitious, and fraudulent statement and representation, to wit: an October 2012 quarterly report filed with the FEC, which falsely, fictitiously, and fraudulently stated that contributions to Committee D came from the funds of individual employees of Mepco, LLC, and certain of their spouses, when, in truth and in fact, as the defendant well knew, the contributions came from himself through the funds of Mepco, LLC.

Count Seven charges that:

> On or about April 15, 2013, in the Northern District of West Virginia and elsewhere, in a matter within the jurisdiction of the Federal Election Commission, a department or agency of the United States Government, the defendant, **JAMES L. LAURITA, JR.**, did knowingly and willfully cause to be made a materially false, fictitious, and fraudulent statement and representation, to wit: an April 2013 quarterly report filed with the FEC, which falsely, fictitiously, and fraudulently stated that contributions to Committee A came from the funds of individual employees of Mepco, LLC, and certain of their spouses, when, in truth and in fact, as the defendant well knew, the contributions came from himself through the funds of Mepco, LLC.

Count Eight charges that:

> On or about July 15, 2013, in the Northern District of West Virginia and elsewhere, in a matter within the jurisdiction of the Federal Election Commission, a department or agency of the United States Government, the defendant, **JAMES L. LAURITA, JR.**, did knowingly and willfully cause to be made a materially false, fictitious, and fraudulent statement and representation, to wit: an July 2013 quarterly report filed with the FEC, which falsely, fictitiously, and fraudulently stated that contributions to Committee C2 came from the funds of individual employees of Mepco, LLC, and certain of their spouses, when, in truth and in fact, as the defendant well knew, the contributions came from himself through the funds of Mepco, LLC.

Defendant has pled not guilty to these counts.

<u>Authorities</u>:     Indictment.     18 U.S.C. §§ 1001(a)(2) and 2.

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 11

### The Statutes Defining the Offense Charged in Counts Six, Seven, and Eight

Section 1001(a)(2) of Title 18 of the United States Code provides, in part, that:

. . . [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States knowingly and willfully makes any materially false, fictitious, or fraudulent statement or representation  . . .

Shall be guilty of an offense against the United States.

Section 2 of Title 18 of the United States Code, provides, in whole, that:

Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Authorities:

18 U.S.C. §§ 1001(a)(2) and 2.

Eric Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § III.

21

**GOVERNMENT'S PROPOSED INSTRUCTION NO. 12**

**Causing False Statement to Federal Election Commission**
**Count Six, Count Seven, and Count Eight**
**Elements of the Offense**

For you to find the defendant guilty of Counts Six, Seven, and Eight of the Indictment, the Government must prove the following elements beyond a reasonable doubt:

First:          The defendant made or caused another person to make a false statement in a matter within the jurisdiction of the Federal Election Commission;

Second:     The statement was material to the activities or decision of the Federal Election Commission; and

Third:       The defendant acted knowingly and willfully.

To establish the first element, the Government must prove beyond a reasonable doubt that a false statement was made in a matter within the jurisdiction of the Federal Election Commission.

To establish the second element, the Government must prove beyond a reasonable doubt that the false statement was material to the Federal Election Commission – in other words, that the statement had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities. The false statement need not have actually influenced the agency, and the agency need not rely on the information in fact for it to be material.

To establish the third element, the Government must prove beyond a reasonable doubt that the defendant acted deliberately and knew that the statement was false. There is no requirement that the defendant acted with the intention of influencing the government agency. To make a false statement "willfully," the defendant must have the specific intent to make or cause another person to make a false statement. Specific intent does not require evil intent but only that the defendant act deliberately and with knowledge. In addition, the Government does not have to prove that the defendant was aware of the statutory requirements and prohibitions of the Federal Election Campaign Act, or that he purposefully violated the Act. In other words, to satisfy the third element of Counts Six, Seven, and Eight, the Government does not have to prove that the defendant was aware that federal law prohibited conduit campaign contributions or that he purposely violated this prohibition. Proof that the defendant acted deliberately and with knowledge that the statements concerning those contributions in the FEC reports were false is sufficient to find the third element of Counts Six, Seven, and Eight satisfied.

Authorities:

18 U.S.C. §§ 1001(a)(2) and 2.

Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § III, V.

United States v. Arch Trading Co., 987 F.2d 1087, 1095 (4th Cir. 1993) (citing United States v. Seay, 718 F.2d 1279, 1284 (4th Cir. 1983)); United States v. Hsia, 176 F.3d 517 (D.C. Cir. 1999); United States v. Kanchanalak, 192 F.3d 1037 (D.C. Cir. 1999); United States v. Curran, 20 F.3d 560 (3d Cir. 1994); United States v. Hopkins, 916 F.2d 2017 (5th Cir. 1990); United States v. Gabriel, 125 F.3d 89 (2d Cir. 1997); United States v. Danielczyk, 917 F.Supp.2d 573 (E.D.Va. 2013).

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 13

### Causing an Act

In order to sustain its burden of proof on any of the counts in the Indictment, it is not necessary for the Government to prove that the defendant personally did every act constituting the offense charges.

As a general rule, if a defendant willfully causes an act to be done by a third-party that, if directly performed by him, would be a crime, he is treated as if he had committed the crime directly himself.   In other words, if the defendant caused someone else—for example, an innocent intermediary—to perform some act by aiding, counseling, commanding, inducing, or procuring the other person's conduct, the law holds him responsible for that conduct just as if it had been personally done by him.  It is not necessary that the third-party—that is, the person or persons who actually performed the act—acted unlawfully for you to find the defendant guilty.


Authorities:

18 U.S.C. §2(b).

1A O'Malley, Grenig, and Lee, Federal Jury Practice & Instructions §18.03 (6th ed. 2008).

United States v. Edwards, No. 11-CR-161 (M.D.N.C. May 18, 2012) (Dkt. No. 288 at 10; Jury Instructions).

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 14

### Proving "On or About"

You will note the Indictment charges that the offense was committed "on or about" a certain date.  The government need not prove with certainty the exact date of the alleged offense.  It is sufficient if the illegal activity happened during a period of time reasonably near the date alleged in the indictment.

Authority:

Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § VII.

United States v. Smith, 441 F.3d 254, 261 (4th Cir. 2006) ("Where a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required.") (internal citations omitted).

**GOVERNMENT'S PROPOSED INSTRUCTION NO. 15**

**Sympathy**

You have been chosen and sworn as jurors in this case to try the issues of fact presented by the allegations of the Indictment and the denial made by the Not Guilty plea of the defendant. This must be decided on the evidence that is presented in this case and not from anything else.

You are to perform this duty without bias or prejudice as to any party. You are not permitted to be governed by sympathy or public opinion. Both the defendant and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court and reach a just verdict, regardless of the consequences.

Authorities:

Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § VII.

United States v. Muse, 83 F.3d 672, 677 (4th Cir. 1996) ("[D]efendant is not entitled to inform the jury that it can acquit him on grounds other than the facts in evidence, i.e. a jury has the power of nullification.").

United States v. Shamsideen, 511 F.3d 340, 343 (2d Cir. 2008) ("A reasonable doubt is not a caprice or whim, it is not a speculation or suspicion, it is not an excuse to avoid an unpleasant duty. It is not sympathy.").

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 16

### Consciousness of Guilt

You may consider evidence that the defendant did, or attempted to, fabricate or suppress evidence, as showing his consciousness of guilt.  This evidence alone is not sufficient to establish guilt, and the significance to be attached is a matter for you, the jury, to determine.

You may consider, as evidence of consciousness of guilt, a specific statement made by the defendant denying guilt or involvement, if you find the statement was not true.

Conduct of a defendant, including statements knowingly made and acts knowingly done, upon being informed of the crime that has been committed or upon being confronted with criminal charges may be considered by the jury.

When a defendant voluntarily and intentionally offers an explanation and makes some statement tending to show his innocence and the explanation of the statement is later shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of guilt.

Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or a statement tending to establish his innocence.  Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of guilt and the significance to be attached to any such evidence are matters exclusively within the province of the jury.

Authorities:

Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § VII.

United States v. Cogdell, 844 F.2d 179, 181 (4th Cir. 1988) (approving this instruction).

27

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 17

### Conjunctive Charge

Although the Indictment alleges that some of the statutes in question were violated by various acts that are joined in the Indictment by the word "and," it is sufficient for a finding of guilt if the evidence establishes beyond a reasonable doubt any one of the violations charged. In other words, counts charged using the word "and" should be read as if they were charged using the word "or." For example, if a count were to allege that a defendant violated a statute by hitting someone and kicking them, it would be sufficient for a finding of guilt if you found that the defendant either hit or kicked him. However, you must unanimously agree that the defendant committed at least one of the acts, and which act was committed.

Authorities:

Turner v. United States, 396 U.S. 398, 420 (1970) ("The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to one of the acts charged.").

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 18

### Rule 404(b) Evidence

You have heard evidence that the defendant committed certain acts which may be similar to acts charged in the Indictment.  You may not consider this evidence in deciding if the defendant committed the acts charged in the indictment.  However, you may consider this evidence for other, very limited purposes, such as: to prove the defendant had a motive or the opportunity to commit the crimes charged in the Indictment; to prove the defendant had the state of mind or intent necessary to commit the crimes charged in the Indictment; to prove the defendant acted according to a plan or in preparation to commit the crimes charged in the Indictment; to prove the defendant knew what he was doing when he committed the crimes charged in the Indictment; to prove the defendant's identity; and to prove that the defendant did not commit the crimes charged in the Indictment by accident or mistake.

Do not conclude from this evidence that the defendant has bad character in general or that because the defendant may have committed other similar acts that it is more likely that he committed the crimes with which he is currently charged.

Authorities:

Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § VII.

United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997) (setting forth when 404(b) evidence is admissible).

United States v. Mohr, 318 F.3d 613, 617-622 (4th Cir. 2003) (analyzing when 404(b) evidence is admissible).

## GOVERNMENT'S PROPOSED INSTRUCTION NO. 19

### Summary Charts Not Received in Evidence

During the trial, certain charts and summaries were shown to you in order to help explain the evidence in the case. These charts and summaries were not admitted in evidence and will not go into the jury room with you. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in this case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

Authorities:

Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § VII.

## <u>GOVERNMENT'S PROPOSED INSTRUCTION NO. 20</u>

### Summary Charts in Evidence

Certain charts and summaries have been admitted into evidence.  Charts and summaries are only as good as the underlying supporting material.  You should, therefore, given them only such weight as you think the underlying material deserves.

<u>Authorities</u>:

Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § VII.

31

**CERTIFICATE OF SERVICE**

I, Jarod J. Douglas, Assistant United States Attorney for the Northern District of West Virginia, hereby certify that on the 12th day of January 2018, the foregoing UNITED STATES' PROPOSED JURY INSTRUCTIONS was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John A. Carr, Esq.
John A. Carr, Attorney at Law, PLLC
179 Summers Street, Suite 209
Charleston, WV 25301
*Counsel for Defendant*

By: /s/ Jarod J. Douglas
Jarod J. Douglas
Assistant United States Attorney